UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ANDRES PEREZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KERN, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-00358-KES-CDB<br><br>ORDER RE PARTIES' REQUEST FOR RESOLUTION OF DISCOVERY DISPUTES<br><br>(Doc. 46) |

Pending before the Court is a discovery dispute that the parties have agreed to submit to the Court for adjudication through the Court's informal discovery dispute procedure. (Docs. 44-47). Following their submission of a joint discovery dispute letter brief (Doc. 46), on October 23, 2025, the Court convened with counsel for Plaintiffs (Robert Ross Powell) and counsel for Defendant County of Kern and individual County defendants (Andrew Christopher Hamilton) via Zoom for informal discovery dispute conference. (Doc. 47). Defendant Margaret Eichorst at the time had not appeared in the action and was not present at the conference. Because no party objected to proceeding with informal discovery dispute resolution and no party requested to brief a motion to compel, the Court heard argument and enters this order resolving the parties' discovery disputes for the reasons set forth and preserved on the record and further addressed below. *See* (Doc. 31 at 5).

///

1

I.     **FACTUAL BACKGROUND**

Plaintiff Ashley Sinden ("Plaintiff"), as the natural parent and purported successor in interest of decedent minor Alejandro Andres Perez ("A.P."), initiated this action with the filing of a complaint on March 25, 2025. (Doc. 1). In her complaint, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and state law to recover damages for actions and/or failures by municipal and individual defendants resulting in the wrongful death of A.P. while in and under Defendants' care, custody, control, and supervision. *Id.* ¶¶ 3-4. Defendants include the County of Kern, social workers and supervisors and other staff employed by the County's Department of Human Services ("DHS") and Adoption Agency, and the foster mother (Margaret Eichhorst, aka Margaret Eichorst) in whose custody A.P. was placed during the relevant time.

According to allegations contained in the complaint, A.P. was removed from Plaintiff Sinden's custody in the early morning hours on March 10, 2023. *Id.* ¶ 28. At that time, A.P.'s younger sister (E.P.), uncle and grandfather also were living with Ms. Sinden. *Id.*

On March 9, 2023, Ms. Sinden directed her grandfather to call 911 following E.P.s sustainment of a burn while in the bathtub. *Id.* ¶¶ 30-31. Paramedics and a deputy sheriff arrived. Based on his observations and discussions with Ms. Sinden and other residents of Ms. Sinden's home, the deputy removed the minors residing there (A.P., his sister E.P., and his uncle) to DHS protective custody. *Id.* ¶¶ 32-34. Several days later, County officials met with Ms. Sinden and asked her to identify her preferred candidates for the placement of her children; contrary to DHS's "standard practice," there was no discussion of any alternative to maintaining possession of her children. *Id.* ¶ 44. Although Ms. Sinden identified preferred custodians if her children were not returned to her, none of the family or non-relative family members she identified ever were notified or processed for approval for placement in violation of applicable policy and procedures and DHS's standing practice. *Id.* ¶ 45.

Both A.P. and E.P. remained in detention by orders of the Juvenile Court based on false information and omissions contained in a detention report prepared by a non-party social worker. *Id.* ¶¶ 41-50, 52. Other social workers, including Defendants Martinez and Frias, falsely represented to the Juvenile Court that A.P. and E.P were placed in the same placement home and provider throughout the period of their removal, when, in fact, they had lived in separate placements. *Id.* ¶ 54. Ultimately,

1  A.P and E.P. were placed by the County in the home of Defendant Eichorst and removed from Ms.
2  Siden's custody.  ¶¶ 55, 57.

3  Prior to the placement of Ms. Sinden's children in Eichorst's care, Eichorst had disclosed to
4  the County that she suffered from mental health conditions, including PTSD, and County officials
5  communicated internally regarding Eichorst's trauma, but failed to deny her placement application or
6  verify Eichorst's report of mental health issues.  *Id.* ¶¶ 60-67, 73.

7  On February 9, 2024, A.P. died due to blunt force trauma to the head.  *Id.* ¶ 111.  At the time of
8  his death, A.P.'s body revealed signs of abuse such as bruising and internal injuries.  *Id.*  Although
9  Eichorst reported that A.P. had fallen off the bed, Plaintiffs allege Eichorst beat A.P. to death.  *Id.* ¶
10  74.

11  **II.   GOVERNING CASE LAW**

12  Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery
13  regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to
14  the needs of the case, considering the importance of the issues at stake in the action, the amount in
15  controversy, the parties' relative access to relevant information, the parties' resources, the importance
16  of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery
17  outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in
18  evidence to be discoverable.  *See, e.g., Ford v. Unknown*, No. 2:21-cv-00088-DMG-MAR, 2023 WL
19  6194282, at *1 (C.D. Cal. Aug. 24, 2023).  "Evidence is relevant if: (a) it has any tendency to make a
20  fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in
21  determining the action."  Fed. R. Evid. 401.  Although relevance is broadly defined, it does have
22  "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51
23  (1978).

24  Relevant here, in response to a party's request for production of documents, the receiving party
25  "is obliged to produce all specified relevant and nonprivileged documents or other things which are in
26  its 'possession, custody or control' on the date specified in the request."  *Jadwin v. Cnty. Of Kern*, No.
27  1:07-cv-0026-OWW-TAG, 2008 WL 2025093, at *1 (E.D. Cal. May 9, 2008) (quoting Fed. R. Civ. P.
28  34(a)).

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objection." *Id*.

### III.   DISCUSSION

The Court addresses three issues presented by the parties' joint letter brief in connection with Defendants' responses and objections to Plaintiffs' requests for production of documents ("RPDs"): (1) Defendants' objection to production of juvenile case file information; (2) Defendants' objection to production of information on grounds of privilege; (3) Defendants' objection to production of information on grounds of relevance.

### A.   Juvenile Case File Information

In response to numerous of Plaintiffs' RPDs, Defendants object "on the ground that documents responsive to this request which constitute juvenile case files are presumptively protected under Welfare and Institutions Code ["WIC"] §§ 827 and 10850 and the constitutional right to privacy." *See, e.g*., (Doc. 46-1 at 18-19, Response to RPD No. 1).

"Juvenile case file" information is defined as records relating to a minor that is the subject of a juvenile court proceeding and that have been filed or made available to the probation officer or other court staff in connection with the juvenile proceeding.  WIC § 827(e).  Although California state law restricts access to juvenile case file information to a narrowly defined class of people (*see generally* WIC § 827), here, Defendants acknowledge their obligation to produce otherwise discoverable, juvenile case file information upon order of this Court. *E.g*., (Doc. 46 at 7-8).  *See Gonzalez v. Spencer*, 336 F.3d 832, 835 (9th Cir. 2003) (recognizing that a district court may order disclosure of juvenile case file information notwithstanding § 827).

As clarified on the record during the discovery dispute conference (Doc. 47), no party objects to the Court's entry of an order directing production of otherwise discoverable juvenile case file information.  *See* (Doc. 46 at 8) ("the County has collected the majority of responsive documents, including the juvenile case file and is prepared to produce the large bulk of documents upon order of the Court.").  Consistent with this, at the Court's direction following the discovery dispute conference, the parties filed a stipulated order directing Defendant County of Kern to produce A.P.'s juvenile case file.  *See* (Docs. 48, 52).  While the Court has considered the privacy implications of releasing juvenile

case file information to Plaintiffs (*see A.C. by and through Park v. Cortez*, 34 F.4th 783, 787-888 (9th Cir. 2022), it finds the risk of harm from disclosure to be minimal given that the anticipated, responsive juvenile case file information at issue is to be produced pursuant to a protective order (*see* Doc. 39) to a party (A.P. and E.P.'s mother) that is permitted under § 827 to inspect such information.

Although Defendants separately object to production of information responsive to many of Plaintiffs' RPDs on the ground of "the constitutional right to privacy," they did not advance any supporting arguments in the parties' joint brief or during oral argument.  Accordingly, any separate objection by Defendants on the grounds of privacy, assuming any such right applies, is overruled.  *See Franklin v. Smalls*, No. 3:09-cv1067-MMA-RBB, 2012 WL 5077630, at *6 (S.D. Cal. Oct. 18, 2012); *see also Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) ("where there are federal question claims and pendent state law claims present, the federal law of privilege applies.") (citations omitted).

### B.  Withholding Production on Grounds of Privilege

In response to numerous of Plaintiffs' RPDs, Defendants object on the grounds of various purported privileges.  Two of the objections will be overruled (on the grounds of official information privilege and self-critical analysis privilege).  The Court will sustain Defendants' objection on attorney-client privilege grounds but require Defendants, to the extent they re-assert this privilege in amended responses to Plaintiffs' RPDs, to timely produce a privilege log at risk of waiving the privilege.

#### 1.  Official Information Privilege

In response to virtually all of Plaintiffs' RPDs, Defendants object on the grounds of "the law enforcement investigatory privilege to the extent [the RPD] seeks documents related to the ongoing criminal investigation into Margaret Eichhorst."  *E.g*., (Doc. 46-1 at 18-19, Response to RPD No. 1).  Defendants clarify in the parties' joint letter brief that this objection invokes "the official information privilege."  (Doc. 9 at 8).

Federal common law recognizes a qualified privilege for official information, referred to alternatively as the "official information privilege" or the "law enforcement privilege."  *See Duenez v. City of Manteca*, No. 2:11-cv-1820 LKK AC, 2013 WL 684654, at *4-5 & n.1 (E.D. Cal. Feb. 22,

2013) (citing *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir.1975)); accord *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990)). To properly invoke the official information privilege, the claiming official "must have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced and state with specificity the rationale of the claimed privilege." *Id*. at *5 (quoting *Kerr*, 511 F.2d at 198) (internal quotations omitted).  The party invoking the privilege must at the outset make a "substantial threshold showing" by way of a declaration of affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit.  *Id*. (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal.1995)).

Relevant here, a party who receives a discovery request "must, within the time permitted by rule to respond or object, serve and file an objection that invokes the official information privilege by name" and "sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D Cal. 1992) (citations omitted).  Additionally, "the party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." *Id.* (citing *Kerr*, 511 F.2d at 198). This affidavit or declaration must contain specific, detailed information to permit the receiving party and the court to assess the propriety of privilege assertion.  *See id.*

Based on the objections asserted in response to Plaintiffs' RPDs, Defendants appear to take the position that they may withhold from production documents merely because they "relate[] to the ongoing criminal investigation into Margaret Eichhorst." *See* (Doc. 46-1 at 18-38).  However, even had Defendants attempted to satisfy the stringent procedural requirements for invoking the privilege summarized above, they additionally would be obligated to demonstrate that the balance of competing interests – which is "moderately pre-weighted in favor of disclosure" – warrants withholding.  *Duenez*, 2013 WL 684654, at *5-6 (quoting *Soto*, 162 F.R.D. at 613).
Because Defendants have not properly invoked the official information privilege, the privilege will be overruled.

///

### 2. Attorney Client Privilege

Rule 26 requires a party that withholds from production on grounds of privilege any otherwise discoverable material to expressly make the privilege claim and provide the requesting party certain information sufficient to permit it to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). One method by which a party may satisfy Rule 26(b)(5) is to serve a privilege log. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992). The Advisory Committee Note to what is now Rule 26(b)(5)(A) does not specify the specific information that must be provided in a privilege log. Advisory Committee Note to Fed. R. Civ. P. 26(b)(5) (1993) ("The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection."). Nevertheless, in order to permit a receiving party (and the Court) to assess a producing party's privilege claim, a log typically must identify, among other things, the document's general nature and description, the name and position of its author, and specific reasons why it was withheld (*e.g.*, the applicable privilege). *Martinez v. City of Fresno*, No. CV F 06-0233 OWW LJO, 2006 WL 3762050, at *6 (E.D. Cal. Dec. 20, 2006) (citing *United States v. Construction Prods. Research, Inc*., 73 F.3d 464, 473 (2nd Cir.), cert. denied, 519 U.S. 927 (1996)). Accord "What Constitutes an 'Adequate Privilege Log' under Rule 26(b)(5)," 51 A.L.R. Fed. 3d Art. 2 (2020) (citing Haydock and Herr, Discovery Practice (Aspen Publishers 2009) & *Sky Angel U.S., LLC v. Discovery Comms., LLC*, 28 F. Supp. 3d 465 (D. Md. 2014), aff'd on other grounds, 885 F.3d 271 (4th Cir. 2018)). Absent agreement among the parties, "[p]rivilege logs are due at the time a discovery response is made." *Sanchez v. Cnty. of Sacramento Sheriff's Dep't*., No. 2:19-cv-01545 MCE AC, 2020 WL 3542328, at *2 (E.D. Cal. June 20, 2020) (citing Fed. R. Civ. P. 26(b)(5) & 34(b)).

Accordingly, in Defendants' amended RPD responses ordered herein, to the extent Defendants reassert objections based on attorney-client and work product privileges, they shall provide Plaintiffs with the information called for under the authorities cited above. Further, because Defendants' responses to Plaintiff's RPDs do not state whether any responsive materials are being withheld on the basis of the asserted privilege, the Court will compel Defendants to serve amended responses in compliance with Rule 34(b)(2)(C) in which any response asserting any objection indicates whether any responsive materials are being withheld on the basis of that objection/privilege.

### 3. The Self-Critical Analysis Privilege

Neither the Ninth Circuit not California state courts have recognized a "self-critical analysis privilege." *See Union Pacific R. Co. v. Mower*, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000) (citing *Cloud v. Superior Court (Litton)*, 50 Cal.App.4th 1552, 1558–60 (1996)). Accordingly, the Court overrules Defendants' objections invoking this privilege. *E.g.*, (Doc. 46-1 at 18-19, Response to RPD No. 1). *See Estate of Matus v. County of Riverside*, No. 5:23-cv-00506-MEMF-SPx, 2024 WL 5413158 , at *8-9 (C.D. Cal. Oct. 7, 2024) ("Because neither the law enforcement investigative privilege nor the self-critical analysis privilege is recognized by the Supreme Court or Ninth Circuit, and because defendants have made no showing that either applies here, defendants may not cite them as bases for withholding any documents.").

### C. Relevance and Proportionality

As discussed during the discovery dispute conference, many of Plaintiffs' RPDs seek broad categories of information over a seven-year time period. In response to some of the undersigned's questions during the discovery dispute conference about the scope of information sought by the RPDs, counsel at one point confirmed that he was "casting a wide net" with his discovery demands.

Although Rule 26 does not expressly assign to the requesting party the burden of establishing that the information sought is relevant, the natural reading of the text (*i.e.*, providing that a party may obtain discovery if relevant to its claim or defense) suggests as much. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied"). Further, courts routinely apply a rule that the requesting party bears the burden of establishing relevance. *E.g., Owen v. Hyndai*, 344 F.R.D. 531, 535 (E.D. Cal. 2023); *Soto*, 162 F.R.D. at 610; *Duenez*, 2013 WL 684654, at *3.

First, notwithstanding that the operative events in the complaint span a period of approximately 12 months, many of Plaintiffs' RPDs seek documents over an approximately six-and-one-half year period. When questioned at the discovery conference why information preceding and post-dating the relevant events by several years was relevant, counsel for Plaintiffs replied only that he was informed certain County officials had interacted with Ms. Sinden some time prior to the removal of her children. A County official's interaction with Ms. Sinden prior to the events at issue in this case may have some

8

marginal relevance to her claims, such as where the interaction was with a named defendant or the substance of the interaction was shared by a County official with a named defendant that had any involvement in investigating or influencing any County decision-making about the removal, placement, or care of Ms. Sinden's children.  However, counsel for Plaintiff could not articulate any broader theory of relevance that would justify such an expansive time period as to other types of information that are the subject of Plaintiffs' RPDs, including, among others, communications between County officials and others of Ms. Sinden's family or communications about Ms. Sinden's family.

Acknowledging that discovery must be proportional to the needs of the case, the Court finds Plaintiffs have not met their burden of demonstrating that searching for and producing the universe of records at issue (covering an approximate six-and-on-half year period) outweighs the possible benefit of production.  Accordingly, the Court will narrow what Plaintiffs define in their RPDs as the "Relevant Time Period" to January 1, 2023, through July 1, 2024.  E.g., Moose Hills, LLC v. Enel Kansas, LLC, No. 2:22-cv-01488 MCE AC, 2023 WL 3437189, at *4 (E.D. Cal. May 12, 2023) ("the [RFPs] are sufficiently narrowly tailored and not overbroad except as to time: they each ask for documents beginning January 1, 2019, when the complaint itself alleges that communications between the parties began in June of 2021.").

Second, Defendants assert relevance objections to numerous of Plaintiffs' RPDs to the extent the requests seek information or documents concerning people besides Ms. Sinden and A.P.  The Court notes that many of Plaintiffs' RPDs purport to require production of information and documents that do not necessarily relate to either Ms. Sinden or A.P., including: (1) internal County communications and communications between the County and law enforcement and third-party service vendors about members of Ms. Sinden's family (RPD No. 1, No. 3, No. 4, No. 12); (2) assessments and other County forms relating to E.P. (RPD No. 8, No. 10); and (3) E.P.'s medical records (RPD No. 7).

Given that Plaintiffs' claims for relief largely allege and rely on a showing that Defendants were negligent or engaged in wrongful conduct or omissions in connection with the removal, placement, and care of Ms. Sinden's deceased child (A.P.), the Court finds Plaintiffs have failed to

demonstrate that larger categories of unrelated information that are the subject of their RPDs are relevant. However, that is not to say, for instance, that only the County's internal communications about Ms. Sinden or A.P. are relevant; the operative inquiry is whether the internal communication is relevant to the removal, placement, and care of A.P. Thus, communications with or about Ms. Sinden's family members or others relating to the removal, placement and care of A.P. plainly satisfy Rule 26's broad definition of relevance. Similarly, an assessment of E.P. (RPD No. 8), while not per se relevant, could satisfy Rule 26's relevancy standard if the assessment relates to the removal, placement, or care of A.P.[1]

Accordingly, Defendants relevance objections are sustained to the following extent: (1) the term "Relevant Time Period" is narrowed to the period of January 1, 2023, through July 1, 2024; (2) documents and information responsive to Plaintiffs' RPDs that relate to the removal, placement, and care of A.P.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, it is HEREBY ORDERED that Defendants shall serve within 14 days of entry of this order amended responses to Plaintiffs' Requests for Production and documents and information responsive thereto consistent with this order.

It is FURTHER ORDERED that Defendant County of Kern shall produce all information discoverable under Rule 26, Fed. R. Civ. P., including A.P. and E.P "juvenile case file" information.

IT IS SO ORDERED.

Dated: **October 28, 2025**

UNITED STATES MAGISTRATE JUDGE

---

[1] Accordingly, because it is possible some (but likely not all or even the majority of) information from E.P.'s juvenile case file may satisfy Rule 26's relevance standard, the Court will order Defendant County of Kern to produce information discoverable under Rule 26 as interpreted herein, notwithstanding such information may constitute E.P.'s juvenile case file.