UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ANDRES PEREZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF KERN, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00358-CDB <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND <br><br> (Doc. 89) <br><br> **30-Day Deadline** |

Pending before the Court[1] is the motion of Defendants County of Kern, Mario Martinez, Maria Frias, Malia Reeves, Cynthia Alvarado, Vick Mishel-Ghasghaie, Guadalupe Monreal, Allison Roberts, Michael Fabro, Lisette Villareal-Lopez, Andrea Cauette, Judy Anne Cariaso, Keishaun Craig, Rachel Heard, and Robin Ackling (collectively, "Defendants") to dismiss the first amended complaint ("FAC") of Plaintiffs Ashley Sinden, as the natural parent and purported successor in interest of decedent minor Alejandro Andres Perez ("A.P.") (collectively, "Plaintiffs") and request for judicial notice in support thereof, filed on March 24, 2026. (Docs. 89; 89-3). On April 8, 2026, Plaintiffs filed an opposition to the motion. (Docs. 93, 95). On April 29, 2026,

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on August 14, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 34).

Defendants obtained leave to file their untimely reply, which was filed that same day. (Docs. 102, 103). On May 1, 2026, Plaintiffs filed a sur-reply brief. (Doc. 107); *see* (Doc. 102). Following review of the parties' filings made in connection with the motion, the Court deemed the motion suitable for disposition without hearing and oral argument and vacated the motion hearing. (Doc. 105) (citing Local Rule 230(g)). For the reasons set forth herein, the Court will grant in part Defendants' motion to dismiss the FAC with leave to amend.

I.    **Relevant Background**

   A.    **Procedural History**[2]

Plaintiffs initiated this action with the filing of a complaint on March 25, 2025. (Doc. 1). Defendants County of Kern, Martinez, Frias, Alvarado, Michel-Ghasghaie, and Cauette answered the complaint on May 20, 2025. (Doc. 11). Following the Court's order on the parties' stipulation granting Defendants leave to file a first amended answer (Doc. 25), on July 11, 2025, the above-named Defendants including Defendant Malia Reeves filed a first amended answer to the complaint. (Doc. 26).

On August 13, 2025, the Court entered the operative scheduling order setting forth discovery, motion and pretrial and trial dates and deadlines, which were amended to reset all events for Bakersfield (CDB) before the undersigned following the reassignment of this action to the undersigned. (Docs. 31, 35). On January 20, 2026, for good cause shown in the parties' stipulation, the Court amended case management dates and deadlines of the scheduling order. (Doc. 70). For good cause shown in the parties' renewed second stipulation, the scheduling order was further amended on May 1, 2026. (Doc. 106).

On January 16, 2026, the parties filed a stipulated request to hold in abeyance briefing on Plaintiffs' motion to amend (Doc. 54) and for a status conference before the Court to discuss Plaintiffs' identification of "new" defendants to be added to its existing motion to amend. (Doc. 66). On January 26, 2026, the parties convened for a status conference before the Court to discuss the parties' stipulated request, Plaintiffs' pending motion to amend, and Plaintiffs' desire to seek

---

[2] Filings are referenced herein according to their CM/ECF-designated pagination.

leave to add additional defendants to an amended complaint. (Doc. 71). The Court ordered the parties to meet and confer and set a briefing schedule on Plaintiffs' anticipated supplemental motion for leave to amend. *Id.* On February 2, 2026, the Court granted the parties' stipulated request to extend the deadline to February 4, 2026, for the parties to complete meet/confer efforts and for Plaintiffs' filing of the supplemental motion for leave to amend. (Doc. 73). Plaintiffs filed the supplemental motion to amend on February 4, 2026. (Doc. 75).

On February 27, 2026, the Court granted Plaintiffs' motion for leave to file the FAC. (Doc. 79). Plaintiffs filed the operative FAC on March 3, 2026. (Doc. 80).

**B.    Factual Background[3] of Plaintiffs' FAC[4]**

Plaintiffs' FAC asserts this action is brought pursuant to 42 U.S.C. § 1983 "to seek redress for Defendants' actions and or failures to act under color of law" in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and to seek redress for Defendants' failure "to adhere to the mandatory statutory duties they owed" to Plaintiffs under both federal and state law "as well as their acts of general negligence." *Id.* ¶ 3. Plaintiffs assert this action "also arises under California Code of Civil Procedure § 377.60 and § 377.30 for A.P.'s wrongful death at the hands of the named [Defendants]" while A.P. was a dependent minor child in the County of Kern's exclusive "care, custody, and control and under its supervision through [the] named Defendants" at the time of his death. *Id.* ¶¶ 4, 12.

Plaintiffs allege a pattern of failures during the underlying state dependency matter, including Defendants' failures to complete required assessments, to maintain accurate placement documentation, to progress relative placements, and for misleading statements to the juvenile court

---

[3] The factual background is derived from allegations in the FAC relevant and material to the instant motion and as raised in the parties' briefing. *See* (Docs. 80, 89, 93, 103, 107).

[4] Defendants request the Court judicially notice Plaintiff's FAC. (Doc. 89-3 at 1); *see* (Doc. 80). The Court denies this request because it is unnecessary to take judicial notice of materials already of record in the case. *See Clee v. Benson Indus., Inc.*, No. 2:24-cv-01529-DAD-AC, 2024 WL 4462337, at *2 (E.D. Cal. Sept. 30, 2024) (citing cases); *see also Phillips v. Irvine Co. LLC*, No. 8:23-cv-00622-CAS-BFM, 2023 WL 5504993, at *1 (C.D. Cal. July 19, 2023) ("The parties are requested not to submit a separate request for judicial notice any time they reference the docket in this action. Unless otherwise stated, the Court will always take judicial notice of its own docket.").

regarding placement of the children at issue and sibling co-placement. *See id.* ¶¶ 73, 88-90; (Doc. 93 at 8). Plaintiffs allege that Defendant social workers Martinez and Frias signed a Welfare and Institutions Code section 366.26 report representing that A.P. and his sibling E.P had remained in the same placement throughout the duration of the juvenile proceedings "when in reality, they had lived in separate placements from March 31[], 2023, through May 30[], of 2023." *Id.* ¶ 90.

The FAC alleges that on September 14, 2023, A.P. and his sibling E.P. were placed in Defendant Margaret Eichhorst's[5] home, which Defendant County of Kern approved as a Resource Family Approval Application ("RFA") home on July 7, 2023, and that A.P. was later killed in that home on February 9, 2024. *Id.* ¶ 91. Plaintiffs allege that on more than one occasion, Plaintiff Sinden pointed out to Defendant Cariaso, the case-carrying social worker for A.P. during his time in Eichhorst's care, that A.P. had visible physical injuries and requested Cariaso document the various marks and bruises on A.P. and advised that A.P. "should be seen by a physician." *Id.* ¶ 93. Plaintiffs allege that Cariso failed to either obtain medical follow-up or document the condition in the materials used for the dependency court proceeding. *Id.* ¶¶ 93-94.

Plaintiffs allege that County personnel approved Eichhorst despite the County's awareness of her "troubling mental health history, including PTSD, anxiety, depression, and remaining childhood major trauma" at the time A.P. and E.P. were placed in her home. *Id.* ¶¶ 98-104. Plaintiffs allege that Defendants Mishel-Ghasghaie, Cauette, Alvarado, Ackling, and Reeves nonetheless failed to deny Eichhorst's RFA and failed to confirm the seriousness of her mental health problems with past or then-current mental health providers, leading to A.P. and E.P.'s placement in Eichhorst's home, "approved by these Defendant social workers[.]" *Id.* ¶¶ 97, 105-07. The FAC alleges that Defendant Reeves, an adoption social worker, omitted Eichhorst's

---

[5] Following the Clerk's entry of default as to Defendant Eichhorst (Doc. 37), on September 18, 2025, Plaintiffs filed a pending motion for default judgment against Eichhorst. (Doc. 40). On October 24, 2025, the Court held a hearing on the motion for default judgment. (Doc. 50). Eichhorst, who is and remains in pretrial custody, appeared pursuant to the Court's issuance of a writ of habeas corpus ad testificandum. (Doc. 43). The Court admonished Eichhorst for failing to timely respond to the complaint and held the motion in abeyance pending Eichhorst's filing of a responsive pleading no later than November 23, 2025. (Doc. 50). The motion for default judgment remains pending before the undersigned and will be addressed in a forthcoming order.

troubling history from a section 366.26 report and misled the juvenile court in representing that Eichhorst, as a prospective adoptive parent, was in good health and had no past or current mental health issues. *Id.* ¶¶ 108-10.

Plaintiffs assert five claims against Defendants, including for: (1) negligence ("Count One"); (2) breach of mandatory duties ("Count Two"); (3) 42 U.S.C. § 1983 for failure to protect/state created danger ("Count Three"); (4) municipal liability under *Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658 (1978) for failure to protect/state-created danger ("Count Four"); and (5) wrongful death under C.C.P. § 377.60 ("Count Five"). *See id.* at 26-35.

In the prayer for relief, Plaintiffs seek compensatory, general, and special damages including wrongful death damages, and punitive damages. *Id.* at 35-36; *see id.* at ¶ 115.

## II.    Governing Authority

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences

in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Nor does the court "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1162 n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id*. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id*. at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002). "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Hamilton*, 746 F. Supp. 2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### III.    Parties' Contentions

Defendants move to dismiss Plaintiffs' FAC for failure to state a claim upon which relief can be granted. (Doc. 89 at 2). Defendants contend Plaintiffs fail to state sufficient facts to establish

6

a negligence claim because Defendant social workers are immune under California Government Code Sections 820.2 and 821.6 and there is no vicarious liability against County of Kern for the acts of immune social workers under Section 815.2(b). *See* (Doc. 89-1 at 6-12). Defendants argue Plaintiffs fail to allege sufficient facts to state their second claim for breach of mandatory duties. *Id.* at 12-16. Defendants separately assert Plaintiffs' Section 1983 claim fails because the FAC does not plausibly allege an individual constitutional violation under either a failure-to-protect or state-created-danger theory, and individual Defendants are entitled to qualified immunity. *Id.* at 16-20. Defendants contend that Plaintiffs fail to state a *Monell* claim against the Defendant social workers as there is no *Monell* liability for individual actors, and the FAC's allegations are conclusory and do not plead sufficient facts to support a claim under any of the three recognized theories of municipal liability against Defendant County. *Id.* 21-27. Lastly, Defendants argue Plaintiffs fail to allege sufficient facts to state a claim for wrongful death. *Id.* at 27-29.

Plaintiffs contend that Defendants' motion to dismiss is procedurally improper and should be dismissed without reaching the merits as County Defendants already answered the original complaint and later filed an amended answer. (Doc. 93 at 6, 10-12). Separately, Plaintiffs argue the FAC pleads concrete facts sufficient to survive a motion to dismiss. *Id.* at 13. Plaintiffs assert Defendants are not entitled to discretionary immunity for the negligence claim as the motion to dismiss fails to point to any allegation in the FAC showing a conscious balancing of the risks and benefits by Defendants. *Id.* at 13-15. Plaintiffs argue the FAC states a claim for breach of mandatory duties because it alleges County of Kern assumed and violated certain mandatory statutory duties. *Id.* at 15-17. Plaintiffs assert they adequately state a Section 1983 substantive due process claim under both the special-relationship and state-created-danger theories of liability, that the FAC sufficiently links the individual Defendants to the constitutional violations, and that qualified immunity cannot be resolved in Defendants' favor on the pleadings. *Id.* at 17-19. Plaintiffs contend the FAC adequately pleads *Monell* liability against the County. *Id.* at 19-21. Lastly, Plaintiffs assert its wrongful death claim survives because the FAC adequately pleads sufficient underlying wrongful acts. *Id.* at 21.

7

In reply, Defendants contend that the Court should reach the merits of their motion, notwithstanding their earlier filing of an answer to the original complaint, because Plaintiffs' filing of a FAC supersedes the original complaint. (Doc. 103 at 5). Defendants largely reiterate in their reply the same argument raised in the motion to dismiss each of Plaintiffs' individual causes of action.

Plaintiffs submit a sur-reply, contending that the FAC "plainly added factual detail, background allegations, and defendant-specific allegations" but "those additions did not change the substantive claims, theory of liability, injury, or operative course of conduct at issue." (Doc. 107 at 3). Plaintiffs argue because the amendment did not materially alter the scope or theory of the case, Defendants should not be permitted to rely on Plaintiffs' filing of the FAC to permit them now to file a Rule 12(b)(6) motion relating to claims that were available to challenge before Defendants answered the original complaint. *Id.*

## IV.    <u>Discussion</u>

### A.    **The Court Will Reach the Merits of Defendants' Motion to Dismiss**

As noted above, then-appearing Defendants filed an answer and a first amended answer to the original complaint before Plaintiffs sought leave to file a first amended complaint. *See* (Docs. 11, 26, 54, 75). In the order granting Plaintiffs' motion and supplemental motion for leave to file the operative FAC, the Court noted that Plaintiffs sought to add six new defendants and additional allegations. (Doc. 79 at 4).

"There is no bright line rule in the Ninth Circuit regarding whether a defendant who has answered a complaint may move to dismiss a substantively similar amended complaint." *Leung v. Fed. Deposit Ins. Corp.*, No. 24-cv-00337-NW, 2025 WL 1397205, at *6 (N.D. Cal. May 14, 2025). However, an "amended complaint supersedes the original [complaint], the latter being treated thereafter as non-existent." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citing *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927-28 (9th Cir. 2012)).

Here, Plaintiffs have provided no persuasive authority that precludes Defendants from moving to dismiss the FAC under the circumstances relevant here—where Plaintiffs added new

defendants and a not-insignificant number of new allegations, contrary to Plaintiffs' representation that "not a single word changed in the FAC from the original complaint other than to add defendants names" (Doc. 93 at 11); *cf.* (Doc. 80) *with* (Doc. 1)—after then-appearing Defendants had previously answered the original complaint. Accordingly, the Court will consider Defendants' motion to dismiss consistent with the practice of other judges in this district.[6] *E.g., Moland v. City of Ceres*, No. 1:16-cv-01073-LJO-SKO, 2017 WL 220309, at *3 (E.D. Cal. Jan. 18, 2027) ("Because the FAC supersedes the [original complaint] in its entirety, Defendant did not waive his right to move to dismiss the FAC by failing to move to dismiss the OC.") (citing cases). Accord *Hanover Ins. Co. v. Wells Fargo Bank, N.A.*, No. CV 18-4146 TJH (KS), 2019 WL 13067065, at *1 (C.D. Cal. Mar. 11, 2019) ("Hanover provided no authority — and this Court could find none — that precludes Wells Fargo from moving to dismiss an amended complaint if it had previously answered the original complaint."); *Miller v. Fuhu Inc.*, No. 2:14-cv–06119-CAS(ASx), 2015 WL 2085490, at *6 (C.D. Cal. May 4, 2015) (permitting defendant to seek dismissal of first amended complaint, notwithstanding it had filed an answer to plaintiff's original complaint). *But see Leung*, 2025 WL 1397205, at *6-7 (finding that a defendant's answer to an original complaint bars it from moving to dismiss "substantively indistinguishable" claims asserted in an amended complaint) (citing cases).

### B.      Claim 1: Negligence

#### 1.      *Governing Authority*

The elements of negligence under California law are: "'(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection

---

[6] To the extent Defendants may have violated Rule 12(b)'s requirement that a "motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed[,]" *see* Fed. R. Civ. P. 12(b), given Plaintiffs' FAC includes several new allegations and names new defendants, and the procedural posture of the case, *see* (Docs. 54, 75, 79), the Court finds good cause to excuse that error to reach the merits of Defendants' motion. *See Gonzalez v. Apttus Corp.,* No. 21-cv-01844-JCS, 2022 WL 3030531, at *3 n.4 (N.D. Cal. Aug. 1, 2022) ("The Court excuses the error, or in the alternative, construes the present motion as seeking judgment on the pleadings under Rule 12(c), which implicates substantially the same standard as a motion to dismiss under Rule 12(b)(6).") (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

Unless the law provides otherwise, public employees are liable to the same extent as private persons, and "public entities are generally liable for injuries caused by the negligence of their employees acting in the scope of their employment." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013).

> 2.    *Analysis*

Plaintiffs allege in their negligence claim that: Defendants shared a special relationship with A.P. "such that a duty of care was owed to him"; that Defendants breached their duties to A.P. while A.P. was in Defendants' care, supervision, and control in failing to "reasonably and adequately place A.P. with an appropriate caregiver," to adequately supervise A.P. after placing in in the care of Defendant Eichhorst, to provide necessary assessments, placement, and supervision services for A.P., and to keep Plaintiff Sinden and the juvenile court apprised of the condition and location placements for A.P. during his time in County of Kern's custody and care; that A.P.'s injuries "which ultimately led to his death were caused by something that only these Defendants exclusively controlled, i.e., his care and supervision" and "Defendants['] acts or omissions caused and/or were a substantial factor in causing A.P.'s injuries – including his death"; and as a direct and proximate result of Defendants' breach, he sustained injuries, death, and damages. (Doc. 80 ¶¶ 118-27). Plaintiffs further allege that Defendant County of Kern "is vicariously responsible for the conduct of its employees … under Government Code sec. 815.2." *Id.* ¶ 128.

Based on these allegations, Plaintiffs have adequately pleaded facts from which the Court can conclude a direct relationship existed between Defendant social worker and A.P. such that they had a duty to A.P. while he was in Defendant County's care, custody, supervision, and control to ensure his adequate supervision to be free from abuse or neglect in a safe placement as well as in the rendering of social services. Plaintiffs also have adequately alleged at this stage of the proceedings facts to support the drawing of a reasonable inference that Defendants breached their duty after placing him in the care of Defendant Eichhorst and that such placement ultimately

resulted in his injuries and death.  *See, e.g., D.C. by and through Cabelka v. Cnty. of San Diego*, 445 F. Supp. 3d 869, 895-96 (S.D. Cal. 2020) (finding minor plaintiffs adequately pleaded negligence claims against defendant social workers based on their direct relationship with plaintiffs).

Defendants contend Plaintiffs' negligence claim fails because Defendant social workers are immune under California Government Code Sections 820.2 and 821.6 and there is no vicarious liability against Defendant County for the acts of immune social workers under Section 815.2(b). (Doc. 89-1 at 6).  Plaintiffs contend that Defendants are not entitled to discretionary immunity because the FAC's allegations do not affirmatively show a considered decision-making by Defendants. (Doc. 93 at 14).

"Under section 820.2 of the California Government Code, 'a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.'" *D.C. by and through Cabelka*, 445 F. Supp. 3d at 896.  "However, 'not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2.'" *Id*. (quoting *Barner v. Leeds*, 24 Cal. 4th 676, 684-85 (2000)).  "[G]overnment defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balanc[ed] risks and advantages[.]'" *A.E. ex. rel Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (quoting *Johnson v. State of Cal*., 69 Cal. 2d 782, 795 n.8 (1968)); *Steinle v. City & Cnty. of S.F.*, 919 F.3d 1154, 1161 (9th Cir. 2019) (explaining that to be entitled to section 820.2 immunity, there must be a showing that the specific conduct giving rise to the suit involved the actual exercise of discretion).  "The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.*

Generally, discretionary immunity cannot be resolved in motion to dismiss. *Id*. at 640 ("It would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants"); *see, e.g., Lee v. Cnty. of Los Angeles*, No. CV 23-6875-GW-MAAx, 2024 WL 2107715, at *6 (C.D. Cal. Feb. 6,

2024) (declining to find discretionary act immunity at the motion to dismiss stage where the complaint did not allege on the part of a social worker defendant a "conscious weighing of risks and benefits by [defendant] prior to making her discretionary choices"); *D.B. v. Brewer*, No. 2:17-cv-01651-CAS(RAOx), 2017 WL 2766437, at *13-14 (C.D. Cal. June 26, 2017) (same) (citing cases). Moreover, Defendant social workers' argument they are entitled to blanket immunity because their "post-placement decisions remain discretionary" fails to advance any specific argument with respect to each Defendant, "let alone discuss whether each Defendant's acts may be considered 'discretionary.'" *See M.M. v. San Juan United Sch. Dist.*, No. 2:19-cv-00398-TLN-EFB, 2020 WL 5702265, at *12 (E.D. Cal. Sept. 24, 2020). The Court therefore finds Defendants' immunity arguments premature at this stage of the proceedings and will decline to apply "such blanket immunity to all acts or omissions undertaken" by Defendants with regard to A.P.'s placement and provision and supervision of social services. *Id.*; *see, e.g.*, *J.E.L. v. San Francisco Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1202 (N.D. Cal. 2016) (denying motion to dismiss amended complaint under Section 820.2 as "this section provides no basis for blanket immunization of all of the specific and individual actions undertaken in response to the bullying of plaintiff at the hands of another student."); *Martinez v. Cnty. of Sonoma*, No. 15-cv-01953-JST, 2015 WL 5354071, at *10 (N.D. Cal. Sept. 14, 2015) (denying motion to dismiss based on § 820.2 because such issue "can generally not be resolved at a motion to dismiss."); *Jones v. Kern High Sch. Dist.*, No. CV-F-07-1628-OWW-TAG, 2008 WL 3850802, at *28 (E.D. Cal. Aug. 14, 2008) (denying blanket immunity for acts relating to "the direct and immediate supervision of school children[.]"). Accordingly, Defendants' motion to dismiss the negligence claim based on Section 820.2 discretionary immunity will be denied without prejudice.

Next, California Government Code § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. "If a public employee is immune under § 821.6, the public entity that employs such employee is not liable under …§ 815.2." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 749 (E.D. Cal. 2008). The Ninth Circuit "has held that section 821.6 only provides immunity in suits for

malicious prosecution." *D.C. by and through Cabelka*, 445 F. Supp. 3d at 897 (citing *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) ("holding that *Sullivan v. County of Los Angeles*, 12 Cal.3d 710 [] (1974), 'confin[ed] [the] reach [of section 821.6] to malicious prosecution actions[.]'")) (alterations in original). Because Plaintiffs do not allege that Defendants engaged in malicious prosecution, they are not entitled to immunity from Plaintiffs' negligence claim under section 821.6 at this stage of the proceedings. Therefore, Defendants' motion to dismiss the negligence claim on this basis will be denied without prejudice.

Under section 815.2(a), "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2(a). Under Section 815.2(b), "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." *Id.* § 815.2(b). Because the Court has determined that Plaintiffs have sufficiently pled a negligence claim, and that the Defendant social workers have not shown they are entitled to discretionary immunity at this stage of the proceedings, the Court likewise finds that Defendant County is not immune from vicarious liability under section 815.2(b) at this time. *See D.C. by and through Cabelka*, 445 F. Supp. 3d at 898.

### C.    Claim 2: Breach of Mandatory Duties

#### 1.    *Governing Authority*

California Government Code section 815.6 provides that a public entity is liable for injury where the entity is "under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, ... [and that injury is] proximately caused by its failure to discharge the duty[.]" Cal. Gov. Code § 815.6; *see Ibrahim v. Cnty. of Los Angeles*, No. 2:18-cv-6013-CBM-SK, 2019 WL 3064424, at *2 (C.D. Cal. May 3, 2019). Three requirements "must be met before governmental entity liability may be imposed under … section 815.6: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3)

13

breach of the mandatory duty must be a proximate cause of the injury suffered." *Michelle K. v. Cnty. of Sonoma*, No. 22-cv-01202-AMO, 2024 WL 4336618, at *8 (N.D. Cal. Sept. 27, 2024) (citing *San Mateo Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 428 (2013)). The first element requires that "the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *Ibrahim*, 2019 WL 3064424, at *2 (citing *Haggis v. Cty. of Los Angeles*, 22 Cal. 4th 490, 498 (2000)); *see Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 898 (2009) ("Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment affirmatively imposes the duty and provides implementing guidelines[.]"); *e.g.*, *O'Toole v. Super. Ct.*, 140 Cal. App. 4th 488, 510 (2006) (finding that a statute that "merely prohibits certain conduct and does not set forth guidelines or rules" did not create a mandatory duty within the meaning of section 815.6).

"[A] provision of law requiring an action without specific guidance on its implementation is not sufficient to create a mandatory duty." *Michelle K.*, 2024 WL 4336618, at *8 (citing *Haggis*, 22 Cal. 4th at 498).

### 2.   *Analysis*

In support of its second claim for relief for breach of mandatory duties, Plaintiffs allege that Defendants violated mandatory duties "including, but not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual and Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code §16501." (Doc. 80 ¶ 131). Plaintiffs allege that Defendants failed to reasonably assess and/or adequately place A.P. with an appropriate caregiver and to adequately assess and/or supervise A.P. after his placement, allowed A.P. to remain in Eichhorst's home despite their knowledge of the inadequacy and possibility of danger in the placement, and failed to keep Plaintiffs in the juvenile court apprised of A.P.'s ongoing condition after his placement. *Id.* ¶ 132.

Plaintiffs allege Defendants violated specific regulations set forth in the CDSS MPP. Defendants do not challenge that the CDSS MPP is sufficiently legislative or quasi-legislative to constitute an "enactment" for purposes of § 815.6; rather, they dispute that the regulations Plaintiffs

cite impose mandatory duties, that such duties were triggered on the pleaded facts, and that such duties were designed to prevent and that the alleged breach of such duties proximately caused the particular injury Plaintiffs allege.  (Doc. 89-1 at 14).

Because the CDSS MPP regulations are alleged in the complaint (Doc. 80 ¶¶ 133 (a)-(g)) and no party disputes their authenticity, the Court considers them in analyzing each of the violations of mandatory duties alleged by Plaintiffs.[7]  *See Branch*, 14 F.3d at 454.

### a. Whether a "Mandatory Duty" Exists

MPP 31-207.17:  This regulation does not appear to exist.

MPP 31-206.24:  "The social worker shall document in the case plan [*inter alia*] … [t]he schedule of planned social worker contacts and visits with the child and the family."

This regulation imposes upon a social worker a mandatory duty to document in the case plan specific events (*i.e.*, contacts and visits).  This duty implicates no discretion and, thus, is a mandatory duty within the ambit of California Government Code section 815.6.

MPP 31-310.12:  "In providing or arranging for the provision of services identified in the case plan, the social worker shall … [m]onitor the child's physical and emotional condition."

The act of monitoring a child's condition involves the exercise of discretion.  Plaintiffs fail to allege in the FAC any officially adopted or approved guidance governing implementation of this regulation that clarifies the specific mandatory duties it imposes.  Thus, because this regulation requires the exercise of discretion, it is not a mandatory duty within the ambit of California Government Code section 815.6.  *See Michelle K.*, 2024 WL 4336618, at *8 (citing *Haggis*, 22 Cal. 4th at 498).

///

///

---

[7] The 2023 version of the CDSS MPPs considered by the Court are available on the website of CDSS.  *See* https://www.cdss.ca.gov/inforesources/letters-regulations/legislation-and-regulations/child-welfare-services-regulations (last visited May 27, 2026); *see also Daniels-Hall v. Nat'l Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities. . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [] therein.").

MPP 31-320.5: "The purpose of social worker contact with the child is to assess the safety and well being of the child and to achieve [enumerated] objectives."

This regulation articulates a policy and does not impose a mandatory duty.

MPP 31-405.12: "When arranging for a child's placement the social worker shall [*inter alia*] … [g]ive preferential consideration for placement of the child to an adult who is a grandparent, aunt, uncle or sibling of the child."

The act of giving preferential consideration to a familial member in placing a child involves the exercise of discretion.  Plaintiffs fail to allege in the FAC any officially adopted or approved guidance governing implementation of this regulation that clarifies the specific mandatory duties it imposes.  Thus, because this regulation requires the exercise of discretion, it is not a mandatory duty within the ambit of California Government Code section 815.6.  *See Michelle K.*, 2024 WL 4336618, at *8 (holding that MPP 31-405.12 does not mandate any particular action and, thus, does not establish a mandatory duty).

MPP 31-405.22: "When arranging for a child's placement the social worker shall [*inter alia*] … [m]onitor the child's physical and emotional condition, and take necessary actions to safeguard the child's growth and development while in placement."

As set forth above, the act of monitoring a child's condition involves the exercise of discretion.  Plaintiffs fail to allege in the FAC any officially adopted or approved guidance governing implementation of this regulation that clarifies the specific mandatory duties it imposes.  Thus, because this regulation requires the exercise of discretion, it is not a mandatory duty within the ambit of California Government Code section 815.6.  *See Michelle K.*, 2024 WL 4336618, at *8 (citing *Haggis*, 22 Cal. 4th at 498).

MPP 31-405.33: "Document the reason(s) for [inter alia] … [t]he child's transfer to another placement location."

This regulation imposes upon a social worker a mandatory duty to document in the case plan a specific event (*i.e.*, the reasons for a child's transfer to another placement location).  This duty implicates no discretion and, thus, is a mandatory duty within the ambit of California Government Code section 815.6.

16

>*b.  Whether the Alleged Breach of Mandatory Duties Proximately Caused a Harm of the Type the Duty Seeks to Protect Against*

As set forth above, the Court has found Plaintiffs adequately allege the existence of two mandatory duties that may give rise to liability:  MPP 31-206.24 (requiring a social worker to document their schedule of planned contacts and visits with the child and the family) and MPP 31-405.33 (requiring a social worker to document the reasons for a child's transfer to another placement location).  Plaintiffs allege that Defendants' failure to adhere to and to fulfill these mandatory duties "was a substantial factor" in A.P.'s suffering of physical, mental, and emotional injuries while placed in Eichhorst's home.  *Id.* ¶ 136.

"Allegations of a breach of a mandatory duty must be pleaded with specificity."  *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 727 (E.D. Cal. 1993).  Here, although Plaintiffs allege that Defendants' documentation efforts were "woefully incomplete and internally inconsistent" (Doc. 80 ¶ 86), they do not allege facts permitting the Court to draw a reasonable inference that these specific, mandatory documentation duties were created to prevent the type of harm A.P. suffered.  Nor does the FAC adequately plead facts from which a reasonable inference may be drawn that Defendants' alleged failure to document their schedule of visits with A.P. or failure to document the reason A.P. was transferred from a resource home to Defendant Eichhorst proximately caused A.P.'s injuries.  *See, e.g.*, *Est. of Benson v. Guiding Hands Sch., Inc.*, No. 2:25-cv-00670-DJC-CSK, 2026 WL 1131294, at *4 (E.D. Cal. Apr. 27, 2026) ("Based on the limited allegations of breach currently presented, it is impossible for the Court to find that Defendant CDE's alleged breach of a mandatory duty was the proximate cause of Plaintiffs' injuries") (citing *San Mateo Union High Sch. Dist.*, 213 Cal. App. 4th at 428); *Donoho v. Cnty. of Sonoma*, No. 15-cv-01392-WHO, 2015 WL 3866228, at *3-4 (N.D. Cal. June 22, 2015) (granting motion to dismiss where pleadings did not establish plaintiff's harm was the "particular kind of injury" for which the mandatory duty was designed to protect against) (citation omitted).

Therefore, Defendants' motion to dismiss Plaintiffs' claim for breach of mandatory duties will be granted as to MPP 31-207.17, MPP 31-310.12, MPP 31-320.5, MPP 31-405.12, and MPP 31-405.22, with prejudice, and as to MPP 31-206.24 and MPP 31-405.33, without prejudice.

**D.    Claim 3: 42 U.S.C. § 1983 for Failure to Protect/State-Created Danger**

1.    *Governing Authority*

To state a claim under § 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)).  This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Faye v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)).

2.    *Analysis*

Plaintiffs assert a § 1983 claim against all Defendants for violation of the Fourteenth Amendment to the U.S. Constitution under both a "failure to protect" and "state-created danger" theory.  (Doc. 80 ¶¶ 138-47).  Plaintiffs allege that A.P. "had a protected liberty interest in being shielded from harm inflicted in foster care and enjoyed a special relationship" with Defendants, and that Defendants acted with deliberate indifference to A.P.'s "rights to continued safety, security, and supervision[,] all of which resulted in his death[.]"  *Id.* ¶¶ 140-41.  Plaintiffs allege that despite Defendants' knowledge that A.P. "was a vulnerable minor due to his young age and that he required at least minimally adequate care, supervision, monitoring, and health services" and that Defendant Eichhorst "was incapable of competently caring for A.P. and that she was possibly dangerous and an inappropriate [p]lacement[,]" Defendants were deliberately indifferent because they failed "to reasonably and/or adequately secure a safe placement for A.P.[,]" to "adequately supervise [him] after being placed in [Eichhorst's] care[,]" and "to keep [Plaintiff Sinden] and the juvenile court apprised of A.P.'s circumstances while in placement."  *Id.* ¶¶ 142-43.  Plaintiffs further allege that Defendants are liable "where their actions create or expose an individual to a danger which he or she would not have otherwise faced" and that A.P.'s Fourteenth Amendment rights were violated and he suffered severe injury resulting in death as a direct and proximate result of Defendants' conduct.  *Id.* ¶¶ 144-46.

The Due Process Clause of the Fourteenth Amendment provides, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause is a *limitation* on state action rather than a *guarantee of minimum levels* of state protections, so the state's failure to prevent acts of private parties is typically insufficient to establish liability under the Due Process Clause." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (citing *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019)) (emphasis in original). In other words, the Due Process Clause "generally does not confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (internal quotations and citation omitted). The Ninth Circuit recognizes two exceptions to this general rule: (1) "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)[,]" and (2) "when a special relationship exists between the plaintiff and the state (the special-relationship exception)." *Murguia*, 61 F.4th at 1106 (citing *Patel*, 648 F.3d at 971–72). "If either exception applies, a state's omission or failure to protect may give rise to a § 1983 claim." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (citation omitted).

At the outset, the Court finds Plaintiffs' allegations in support of their § 1983 claim constitute "shotgun pleadings" that fail under Fed. R. Civ. P. 8. The Ninth Circuit recently has recognized the type of shotgun pleading that is at issue here in Plaintiffs' § 1983 claim—where the allegations "do not tie factual averments against *specific parties* to *individual causes of action*." *Gibson v. City of Portland*, 165 F.4th 1265, 1290 (9th Cir. 2026) (emphasis added). Specifically, Plaintiffs do not identify any specific Defendant by name in the body of their § 1983 claim. Instead, Plaintiffs "incorporate[] by reference" 107 of the FAC's preceding paragraphs and summarily assert that "defendants acted with deliberate indifference" and "[d]efendants deliberately and without good cause placed A.P. in [Eichhorst's] home." (Doc. 80 ¶¶ 138, 141, 145). This violates Rule 8 because "[f]actual allegations, however detailed, must be tied to corresponding causes of action." *Gibson*, 165 F.4th at 1293. Even where, as here, "Plaintiffs pleaded detailed facts" throughout the body of their complaint, the Ninth Circuit permits district courts to dismiss shotgun pleadings under

19

Rule 8 where "[a]ll details evaporate when [Plaintiffs] had to link their facts to their causes of action." *Id*. at 1291 (affirming dismissal of complaint as a shotgun pleading, notwithstanding that it set forth detailed facts in 252 numbered paragraphs).

Just as in *Gibson*, here, Plaintiffs plead in conclusory fashion in a single cause of action that *all* defendants engaged in deliberate indifference pursuant to multiple theories of liability ("failure to protect" and "state-created danger") without alleging any specific fact tied to any specific defendant. *See id*. at 1292 ("because the complaint refers to all of the facts, it fails to identify the specific actions that amounted to these violations. None of this is clear from the complaint. These allegations require repleading."). To take one example of the challenge this presents to Defendants (and to the Court): within the body of the complaint, Plaintiffs plead that one Defendant (Cariaso) ignored repeated reports of A.P.'s injuries and requests for medical care, whereas another Defendant (Reeves) omitted pertinent mental-health information about Eichhorst from a dependency report. (Doc. 80 ¶¶ 93-94, 108-10). These two Defendants plainly had different roles and different interactions with A.P. and Eichhorst, yet, the substance of the § 1983 cause of action makes no distinction between their alleged deliberate indifference, leaving it to Defendants (and to the Court) to "fill in the blanks." *Gibson*, 165 F.4th at 1292.

The remedy is to require Plaintiffs' § 1983 claim "be repleaded to identify the allegedly offending parties by name, their allegedly unconstitutional actions by something more than reference to the entire complaint, and the legal basis for their claim." *Id.* at 1294. To facilitate Plaintiffs' proper re-pleading, the Court addresses below the two theories of liability underlying Plaintiffs' § 1983 claim.

a.    Special-Relationship Exception

"The special-relationship exception 'applies when [the] state takes a person into its custody and holds him there against his will.'" *Murguia*, 61 F.4th at 1109. "In the case of a minor child, custody does not exist until the state has so restrained the child's liberty that the parents cannot care for the child's basic needs." *Patel*, 648 F.3d at 974. "When the state takes custody of a child, it must provide the child with 'reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child.'" *Shane v. Cnty. of San Diego*, 677 F. Supp.

20

3d 1127, 1136 (S.D. Cal. 2023) (citing *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). "[T]he proper standard for determining whether a foster child's due process rights have been violated is 'deliberate indifference,' the same standard applied to substantive due process claims by prisoners. [ ] This standard 'requires an objective risk of harm and a subjective awareness of that harm.'" *Henry A.*, 678 F.3d at 1001 (citations omitted). "To be more specific, it requires (1) 'a showing of an objectively substantial risk of harm'; and (2) 'a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed' and (a) 'the official actually drew that inference' or (b) 'that a reasonable official would have been compelled to draw that inference.'" *Id.*

Here, Plaintiffs' FAC adequately alleges that Eichhorst's troubling mental health history constituted an objectively substantial risk of harm for a foster child placed under her care. However, beyond this, Plaintiffs' § 1983 claim advances only general allegations about Defendants' collective awareness of the risk, collective "special relationship" with A.P., and collective failure to adequately assess the appropriateness of A.P.'s placement with Eichhorst— without reference to any specific Defendant or specific actions or inactions from which a reasonable inference could be drawn that the specific Defendant was deliberately indifferent, thereby leaving it to Defendants (and to the Court) to "fill in the blanks." *Gibson*, 165 F.4th at 1292.

b.    State-Created Danger Exception

"To state a substantive due process claim based on a state-created danger, a plaintiff must establish three elements: (1) 'that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced'; (2) 'that the injury she suffered was foreseeable'; and (3) 'that the officers were deliberately indifferent to the known danger.'" *Shane*, 677 F. Supp. 3d at 1138 (citing *Martinez*, 943 F.3d at 1271); *see Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 975 (E.D. Cal. 2022) ("To succeed on a state-created danger claim, a plaintiff must show, inter alia, that 'the [defendant's] affirmative actions created or exposed [the plaintiff] to an actual, particularized danger that [the plaintiff] would not otherwise have faced' and that the danger resulted in a foreseeable injury to the plaintiff.") (citation

21

omitted). "Deliberate indifference requires that the official 'knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it.'" *Id.* (citing *Patel*, 648 F.3d at 974).

Plaintiffs' state-created danger pleadings fare no better than their failure-to-protect/special relationship allegations insofar as they, too, are couched in general and collective language and fail to identify any specific Defendant or his or her specific conduct or omitted conduct that allegedly violated Plaintiffs' constitutional rights. Indeed, some of these general allegations are undermined by or inconsistent with facts appearing in the body of the complaint. For instance, although the § 1983 cause of action alleges that all Defendants "deliberately and without good cause placed A.P. in [Eichhorst's] home[,] thereby creating an unreasonably dangerous condition for A.P" (Doc. 80 ¶ 145), there are no facts alleged anywhere in the complaint from which any reasonable inference could be drawn that three of the Defendants (Mishel-Ghasghaie, Cauette, and Alvarado) had any involvement in either the recommendation or the approval of A.P.'s placement in Eichhorst's care. *Cf. M.M.E. by and through Flores v. Cnty. of San Bernardino*, 709 F. Supp. 3d 1033, 1044 (C.D. Cal. 2023) ("The Ninth Circuit law on the 'state-created danger' doctrine makes clear that social workers cannot place foster children where they will meet affirmative dangers such as an abusive foster parent."); *see id.* (citing *Henry A.*, 678 F.3d at 1003) (finding plaintiffs stated a claim under state-created danger doctrine when defendants "'knew of the danger of abuse and neglect' that the plaintiffs faced in certain foster homes but acted 'with deliberate indifference by exposing [the plaintiffs] to that danger anyway[.]'"); *D.C. by and through Cabelka*, 445 F. Supp. 3d at 891 ("Based on the body of state-created danger caselaw, the Social Worker Defendants were on notice that placing and maintaining a foster child with a known history of sexually abusing his male foster siblings in a home with three young boys would violate the young boys' rights to due process.").[8]

///

---

[8] Given the Court's conclusion that Plaintiffs' § 1983 claim as presently pleaded fails under Rule 8, the Court need not at this time resolve the parties' arguments regarding qualified immunity. *Cf. Keates v. Koile,* 883 F.3d 1228, 1235 (9th Cir. 2018) ("[A] decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity were the case permitted to proceed, at least to the summary judgment stage and the court is presented with facts providing context for the challenged actions.") (internal quotation and citation omitted).

22

**E.    Claim 4: *Monell* Claim for Failure to Protect/State-Created Danger**

1.    *Governing Authority*

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*  Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort."  *Monell*, 436 U.S. at 691.  This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted).  A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy.  *See Long*, 442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. Cnty. of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

23

party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez*, 666 F.3d at 637 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

"Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. In an 'omission' action, a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty. of San Diego*, No. 24-CV-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024) (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

Applied in the context of a § 1983 claim against county social workers for their actions or inactions relating to care or placement of a foster child, a *Monell* plaintiff must satisfy one of three conditions: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; or (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law"; or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *D.C. by and through Cabelka*, 445 F. Supp. 3d at 892 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

        2.    *Analysis*

Here, even assuming Plaintiffs adequately pleaded a § 1983 claim against Defendant social workers based on their violation of A.P.'s substantive due process rights under either the special-relationship exception or the state-created danger exception, they fail to adequately allege *Monell* liability against Defendant County of Kern.[9]

___

[9] Although Plaintiffs' municipal liability cause of action is alleged against "all Defendants," they concede in their opposition to Defendants' motion to dismiss that the claim only properly may be asserted against a municipality, "not against individuals." (Doc. 93 at 20).

Plaintiffs' FAC asserts a *Monell* liability claim based on allegations that Defendant County "established and/or followed a constitutionally defective program of training and supervision that permitted the establishment of procedures, customs, practices … which were the moving force behind the violation of AP's constitutional rights to at least minimally adequate care, supervision, safety, and security[.]" (Doc. 80 ¶ 149).  Plaintiffs allege various customs and/or practices of County of Kern, including "failing to adequately assess community care facilities and/or foster homes prior to placing foster children ensuring the placement's capabilities meet the particular child's known needs"; failing to adequately assess the placement homes to ensure they will be safe and appropriate prior to placing foster children in the custody of [County of Kern] in such placement"; "of approving placements and maintaining foster children in placements in community and/or foster care's facilities known or suspected to be inadequate and inappropriate"; and "of committing fraud on the dependency [c]ourt, lying and manipulating the presentation of evidence to the [c]ourt in order to achieve the [County of Kern's] goals and needs, regardless of the needs of the vulnerable young children the [c]ourt had placed in the agency's care, custody, and control; the favored method for lying to the [c]ourt in Kern County's Department of Human Services was by way of 'omission,' leaving facts out of reports and positions taken in [c]ourt proceedings." *Id.* ¶¶ 149(a)-(d).  Plaintiffs allege that these customs, practices, and/or policies has led to the injury and death of at least five (5) children, including A.P., "four of which have been killed and/or died in a foster placement in the past six (6) years[.]" *See id.* ¶¶ 150(a)-(d).

"It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim." *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017).  However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.  The touchstone for *Monell* liability is that the municipality's decisionmakers had notice of *similar* past instances of misconduct.  Without such notice, "county decisionmakers can

Accordingly, Plaintiffs' fifth cause of action will be dismissed against the individual Defendants with prejudice.

25

hardly be said to have deliberately chosen to implement the policy that causes violations of constitutional rights." *Est. of Luna v. Orange Cnty. Sheriff's Dep't*, No. 8:23-cv-02180-DOC-KESX, 2024 WL 3218649, at *2 (C.D. Cal. June 20, 2024) (quotations and citations omitted). "Thus, [p]rior indicators cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required ... they must be sufficiently similar to the present deprivation such that the County's failure to act to address the previous violations constitutes a deliberate decision to deny the plaintiff constitutional rights." *Id.* (citation omitted).

Here, Plaintiffs' allegations describe only in general terms the existence of policies maintained by Defendant County that caused Plaintiffs' due process violations, including, as an example, that Defendant social workers approved placements and maintained foster children in placements known or suspected to be inadequate and inappropriate. *See* (Doc. 80 ¶¶ 100 - 112). But aside from these policies' alleged operation in relation to Plaintiffs' claims that Defendant violated their constitutional rights, the FAC lacks any facts from which an inference reasonably may be made that it was such policies – and not the individual Defendant social workers' conduct – that was the moving force behind the alleged constitutional injuries. *E.g., Rosaa v. Oregon by and through Oregon Health Auth.*, No. 6:25-cv-01622-AP, 2026 WL 381844, at *4 (D. Or. Feb. 11, 2026) ("Even construing Plaintiff's Complaint liberally in his favor, a mere statement that a single incident is evidence of a custom or practice is not sufficient to survive a motion to dismiss." (footnote omitted, relying on *Benavidez*, 993 F.3d at 1154).

In support of tying Defendants' alleged unconstitutional acts and omissions to policies and practices, Plaintiffs refer in the FAC to the alleged deaths of four other children while in Defendant County's custody pursuant to its foster care placements. (Doc. 80 at ¶ 150). However, Plaintiffs' cursory allegations about these events do not cure their failure to adequately allege the existence of an unconstitutional policy or practice that was the driving force behind their injuries. First, the only common fact alleged concerning the four other children (who died in three separate incidents) is that their foster parents were charged with the children's murder. Such barebones pleading does not permit the drawing of any reasonable inference that the policies and practices Plaintiffs allege

26

are at issue here were similarly the same policies and practices that caused the other children's deaths. As an example, Plaintiffs' *Monell* claim relies in part on Defendant County's alleged maintenance of "customs, policies, and/or practices of maintaining foster children in homes *known to be problematic*" (Doc. 80 ¶ 150, emphasis added); however, there are no factual allegations concerning whether and how social workers knew the foster placements of the other referenced minor children similarly were "known to be problematic." *E.g., Est. of Luna*, 2024 WL 3218649, at *2 ("The purpose of requiring that the prior instances be similar is tethered to *Monell's* doctrinal moorings."). Second, the examples included in Plaintiffs' allegations span a period of approximately 14 years, including one incident in 2010, one in 2019, and two in 2024 (including the death of A.P.). The gaps in time between the incidents alleged and the long duration of time over which the incidents occurred do not permit the drawing of any reasonable inference that they all were the product of the same unconstitutional policies and practices at issue here, but rather, that they are isolated or sporadic events that are not predicates for *Monell* liability. *See Trevino*, 99 F.3d at 918; *see also Meehan v. City of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) ("Proof of unconstitutional assaults by [defendant's] agents on December 21 and March 10, standing alone, does not support a finding of liability against the County."); *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1209-11 (E.D. Cal. 2019) (granting judgment on the pleadings and dismissing municipal liability claim where timing and likeness of proffered examples of city's alleged inaction were too disparate to constitute a pattern sufficient under *Monell*).

Therefore, the Court concludes that Plaintiffs have failed to state a municipal liability claim against Defendant County under § 1983.

**F.    Claim 5: Wrongful Death (C.C.P. § 377.60)**

1.    *Governing Authority*

Section 377.60 creates "a cause of action for the death of a person caused by the wrongful act or neglect of another." Cal. Civ. Proc. Code § 377.60; *Hayes*, 736 F.3d at 1230 ("[Section 377.60] relates to wrongful death actions that are based on personal injuries resulting from the death of another[.]"). A wrongful death claim under Section 377.60 is an "original and distinct cause of action granted to the heirs and personal representatives of the decedent to recover damages

27

sustained by them by reason of the wrongful death of the decedent." *Schwarder v. United States*, 974 F.2d 1118, 1123 n.3 (9th Cir. 1992) (citing *Van Sickel v. United States*, 285 F.2d 87, 90 (9th Cir. 1960)); *see Davis v. Bender Shipbuilder & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994) (finding "[i]n a wrongful death action ... the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death"). A wrongful death action may be brought "by decedent's personal representative or any of a defined list of persons that includes a decedent's spouse, children, or heirs." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (quotations omitted; citing Cal. Civ. Proc. Code § 377.60). A decedent's "parents may sue for the wrongful death of their child 'if they were dependent on the decedent.'" *Chavez v. Carpenter*, 91 Cal. App. 4th 1433, 1445 (2001) (citing Cal. Civ. Proc. Code § 377.60(b)). A "'person who seeks to commence an action ... as the decedent's successor in interest' under California law must file a declaration that contains certain information." *Garcia v. Adams*, No. F 04-5999-AWI-SMS, 2006 WL 403838, at \*12 (E.D. Cal. Feb. 17, 2006) (quoting Cal. Civ. Proc. Code § 377.32).

To plead a wrongful death claim, a plaintiff must demonstrate "(1) a wrongful act or neglect on the part of one or more persons that (2) causes (3) the death of another person." *Estate of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1118 (E.D. Cal. 2013) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999)); *see Bock v. Cnty. of Sutter*, No. 2:11-cv-00536-MCE-GGH, 2012 WL 3778953, at \*19 (E.D. Cal. Aug. 31, 2012). "A wrongful death claim may be predicated on negligence or other tortious conduct." *Id.* A wrongful death claim may also be based on a defendant's deliberate indifference. *See Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017) ("§ 1983 [...] can form the basis of a claim for wrongful death").

2.    *Analysis*

As noted above, the Court finds that Plaintiffs have adequately pleaded a negligence claim against Defendants and that their actions and/or inactions are not shielded by immunity at this stage of the proceedings. Therefore, Plaintiffs have adequately pleaded an independent wrongful death claim against Defendants for the same reasons addressed above. *Cnty. of Sutter*, 958 F. Supp. 2d at 1118; *Villarreal*, 254 F. Supp. 3d at 1191.

**G.    Leave to Amend and Supplemental Jurisdiction**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  However, courts may, in their discretion, choose to decline leave to amend due to futility of amendment, bad faith or undue delay by the pleading party, prejudice to the opposing parties, dilatory motive or conduct by the pleader, or a pleader's repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010). A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, because the Court finds that Plaintiffs may be able to cure the identified deficiencies in their federal civil rights claims and their state law claim for breach of mandatory duties, the Court will grant Plaintiffs leave to amend these claims. *Lopez*, 203 F.3d at 1127.  However, if Plaintiffs are unable to remedy the deficiencies noted in their federal civil rights claims and the only claims deemed cognizable in any further amended complaint are state law claims, the Court preliminarily intends to decline to exercise supplemental jurisdiction over those state law claims and dismiss them without prejudice. *See Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

**V.    Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss Plaintiffs' first amended complaint (Doc. 89) is GRANTED IN PART:

    a. Plaintiffs' claims for breach of mandatory duties ("Count Two") based on MPP 31-207.17, MPP 31-310.12, MPP 31-320.5, MPP 31-405.12, and MPP 31-405.22 are dismissed with prejudice, and based on MPP 31-206.24 and MPP 31-405.33 are dismissed without prejudice and with leave to amend;

     b.  Plaintiffs' claims against all individual Defendants named in the Section 1983 municipal liability cause of action ("Count Four") are dismissed with prejudice; and

     c.  Plaintiffs' claims under Section 1983 for violation of substantive due process ("Claim Three") and for municipal liability ("Court Four") are dismissed without prejudice and with leave to amend;

2. Plaintiffs SHALL FILE **within 30 days** of entry of this order any second amended complaint ("SAC") consistent with this order.

3. Defendants SHALL FILE their response to any timely filed SAC consistent with Fed. R. Civ. P. 15(a)(3).

Any failure by Plaintiffs to timely file a SAC that remedies the deficiencies in their Section 1983 claims noted herein may result in the Court dismissing those claims with prejudice and dismissing Plaintiffs' state law claims without prejudice.

IT IS SO ORDERED.

Dated:   **June 4, 2026**           _____

UNITED STATES MAGISTRATE JUDGE